UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | )  No. S1-4:08CR249 ERW ) |
| DONALD TURNER, et al., | ) ) |
| Defendants. | ) |

**MEMORANDUM AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). Presently pending are the Defendant's motion to dismiss the indictment and motion to suppress evidence and statements. The undersigned held a hearing on the Defendant's motions on October 7, 2008. Based upon the evidence adduced at the hearing on the motion to suppress, the undersigned makes the following findings of fact and conclusions of law:

**Findings of Fact**

Shawn Cope is a narcotics detective with the Jefferson County Sheriff's Department, Metropolitan Enforcement Group. As a narcotics detective, he has received special training in the detection and search of facilities and residences used in the manufacture of methamphetamine.

On September 28, 2007, he received a report from Deputy Frazier, a uniformed Jefferson County road patrol deputy who, while on patrol on that date, detected a chemical odor which he believed was possibly associated with the manufacture of methamphetamine coming from a residence at 3850 Fountain Road in DeSoto, Missouri. Because of this, Cope and other narcotics detectives went to the area of 3850 Fountain Road. From the street in front of this address, Cope detected the

smell of anhydrous ammonia, acetone, and starter fluid. Because these smells are all associated with the manufacture of methamphetamine, Cope and other detectives walked up to the front door of the house in order to make sure that the smells were coming from the house.

The detectives could see the front of the house from the street, and the house sat approximately sixty feet from the street. No gate or other fence blocked the detectives' access to the driveway of the house or to the front door of the house. As the detectives approached the front door of the house, they smelled the same odors only the odors were much stronger and appeared to definitely be coming from the residence. When odors of the manufacture of methamphetamine come from a residence, this raised significant public safety concerns on the part of the detectives. All three of the chemicals which Cope smelled are used in the manufacture of methamphetamine, and all three are extremely hazardous to human beings. Because detectives never know for certain who is in a house (it could be children or elderly persons), they attempt to make entry into a drug manufacturing premises in order to secure the residence and to remove people from the house for their own safety and the safety of others.

When the detectives reached the front door, they knocked on the door, however, no one answered the door. They looked in a window which was next to the door, and observed the Defendant and another individual seated at the kitchen table. They knocked again, and announced why they were at the premises. Instead of coming to the door, one of the individuals walked into what they later determined to be a bathroom, while the Defendant walked down the steps to the basement of the house. Eventually, the detectives observed through a window that the Defendant was in the basement of the house pacing back and forth, and the other individual could not be observed. Because they could not gain entry either through the rear of the house or the front of the

house without the use of force, they again knocked on the door while they loudly announced their presence. Again, there was no response, and for public safety reasons they forced entry to the residence.

After gaining entry, they noticed that the odor was much stronger inside the house than outside the house. They also observed in the kitchen area of the house, numerous items associated with the manufacture of methamphetamine. Specifically, in the kitchen area, they found Rubber Maid containers with liquids, hydrogen peroxide, acetone, Zip Lock baggies, Coleman camp fuel, a bucket of liquid, plastic funnels, a digital scale, tubing, grinders, latex gloves, coffee filters, a fan, empty jugs, Pyrex dishes, and a baggie with powder. They located a second individual, Larry Sanders, in the upstairs bathroom and arrested him. They found the Defendant Donald Turner downstairs. Outside the residence, they observed several anhydrous ammonia tanks which had been altered to be used in the manufacture of methamphetamine. These tanks were found in the engine compartment of a wine-colored pickup truck in which was there no engine. When arrested, Defendant Turner gave his address in Richwood, Missouri, and gave no indication that he lived at 3850 Fountain. The Defendant also had no apparent connection at all with the pickup truck, nor did he claim one.

**Conclusions of Law**

Based on the above facts, the undersigned concludes that the search of the premises and the seizure of the drug manufacturing materials was lawful. As to the initial entry onto the property, the undersigned concludes that the Defendant has no reasonable expectation of privacy in the driveway leading from the road to the house or as to a path any person would take to get to the front door and knock on it. As stated by the Court in United States v. Ventling, 678 F.2d 63 (8th Cir. 1982):

> The standard for determining when the search of an area surrounding a residence violates fourth amendment guarantees no longer depends on outmoded property

concepts, but whether the defendant has a legitimate expectation of privacy in the area. . .

678 F.2d 63, 66.

In United States v. French, 291 F.3d 945 (7th Cir. 2002), a probation officer entered onto the defendant's property and driveway and walked along a walkway to the front door. When the defendant did not appear to be in the house, he walked along another walkway toward a shed area, where he discovered a methamphetamine lab. In holding that going onto the property in this manner and for this reason did not invade the defendant's reasonable expectation of privacy, the Court stated as follows:

> . . .In Evans, we noted that " 'it is not objectionable for an officer to come upon that part of the [private] property which has been opened to public common use. The route which any visitor or delivery man would use is not private in the Fourth Amendment sense, and thus if police take that route for the purpose of making a general inquiry or for some other legitimate reason, they are free to keep their eyes open.' "

United States v. French, 291 F.3d 945, 953. In United States v. Reyes, 283 F.3d 446 (2nd Cir. 2002), a probation officer walked onto a probationer's property using a driveway. There was a chain across the driveway limiting vehicular access, but nothing to keep the officer from walking onto the property. From the location onto which he walked, the probation officer smelled marijuana and viewed the growing marijuana plants. In holding that the probation officer's conduct was lawful, the Court stated as follows:

> "[t]he route which any visitor to a residence would use is not private in the Fourth Amendment sense," when "police take that route 'for the purpose of making a general inquiry' or for some other legitimate reason, they are 'free to keep their eyes open'. . . ." Accordingly, we have found no Fourth Amendment violation based on a law enforcement officer's presence on an individual's driveway when that officer was in pursuit of legitimate law enforcement business.
> . . .

> The District Court in the instant case found that the gravel-covered area which USPO Watts and NYS Parole Officer Smith walked, and from which they viewed the outdoor marijuana plants, was "clearly a driveway with access for pedestrian traffic. . ." Although there was a chain to prevent vehicles from entering the driveway, there were no signs forbidding pedestrian access.

283 F.3d 446, 465, 466.

Given the above, the undersigned concludes that the officers lawfully entered the Defendant's driveway and went up to the house and knocked on the door. While there, they could see in the window and observe what was happening in the house as any person making a delivery or going to the front door could see. Therefore, their arriving at the door and looking in the window was a lawful pursuit.

As to the search of the premises and the vehicle, the undersigned concludes that the search of the kitchen area of the house and the pickup truck are based on probable cause and exigent circumstances, and thus are lawful. As stated in United States v. Kleinholz, 339 F.3d 674 (8th Cir. 2003), the warrantless initial search of a house or other premises or vehicles is justified by probable cause given the very nature and danger of methamphetamine production. In Kleinholz, supra, officers received an anonymous tip that methamphetamine was being produced at a particular house. They went to the house and smelled a strong smell of ether. Without obtaining a valid consent or other search warrant, the officers entered the house, viewed an illegal methamphetamine lab, made sure all occupants were out of the house and unarmed, then exited the house. In holding that the most important aspect of probable cause was the smell of the chemicals related to methamphetamine production, the Court stated as follows:

> Most importantly, however, law enforcement smelled ether: a substance known to be used in the manufacture of methamphetamine. United States v. Francis, 327 F.3d 729, 736 (8th Cir. 2003). The smell of ether alone might support a finding of probable cause. See United States v. Clayton, 210 F.3d 841, 845 (8th Cir. 2000)

(holding officer "developed probable cause for the search based on his immediate perception of an odor associated with methamphetamine production.")

339 F.3d 674, 677. In United States v. McCoy, the Court held that the odor of an illegal drug without more is enough to constitute probable cause to search. In so holding, the Court stated as follows:

> While seated with McCoy in his patrol car, the officer noticed the odor of burnt marijuana on McCoy. The officer had earlier observed the strong smell of air freshener, a potential masking agent, coming from McCoy's car. Under these circumstances, we conclude the officer had probable cause to search McCoy's vehicle for marijuana. See United States v. Neumann, 183 F.3d 753, 756 (8th Cir. 1999) (officer's detection of smell of burnt marijuana gave probable cause to search vehicle). . .

United States v. McCoy, 200 F.3d 582, 584 (8th Cir. 2000). In United States v. Gerard, 362 F.3d 44 (8th Cir. 2004), the Court stated as follows in recognizing that the odor of an illegal drug is sufficient without more to establish probable cause to search. In so holding, the Court stated as follows:

> The Supreme Court recognizes that the odor of an illegal drug can be highly probative in establishing probable cause for a search. Johnson v. United States, 333 U.S. 10 (1948); accord United States v. Caves, 890 F.2d 87, 91 (8th Cir. 1989). Circuits have held that the odor of marijuana standing alone is sufficient to support probable cause. United States v. Tobin, 923 F.2d 1506, 1512 n.4 (11th Cir. 1991); United States v. Nielson, 9 F.3d 1486 (10th Cir. 1993); United States v. Elkins, 300 F.3d 638, 659 (6th Cir. 2002); United States v. Moore, 329 F.3d 399, 405 (5th Cir. 2005).

United States v. Gerard, 362 F.3d 484, 489.

Based on the above law, the undersigned concludes that there was sufficient probable cause to search the house. Police officers smelled the strong odor of three dangerous chemicals used in the manufacture of methamphetamine coming from the house. When they knocked on the door, the Defendant and his companion immediately left the area where they could be seen from the door, and went to areas where they could not be observed from the front of the house. They continued to

refuse to answer the door when the officers announced that they were police officers and why they were at the premises. In addition, the officers observed cash sitting on the table where the Defendant was seated. Based on the above, the undersigned concludes that as in Kleinholz, Gerard, and McCoy, supra, there was sufficient probable cause based on the smells emanating from the house as well as the actions of the defendants upon learning that the police were at the door to show at least a "fair probability" that evidence of methamphetamine production would be found in the house. Therefore, the undersigned concludes that probable cause existed to search the house. See Illinois v. Gates, 462 U.S. 213, 232 (1983).

As to exigent circumstances, the Court stated as follows in United States v. Kleinholz, supra:

In the case at bar, law enforcement entered Kleinholz's house to confirm their suspicion that a methamphetamine lab was being operated and to reduce the immediate risks of fire and explosion posed by such a lab. Upon confirming the presence of the lab, law enforcement was further justified in reentering the house to make the lab safe. Thus the initial entries, though without benefit of a warrant, were not unconstitutional, and did not, therefore, taint the written consent later obtained from Kleinholz. Besides, once law enforcement had entered the house legally, pursuant to probable cause and exigent circumstances, they were not required to ignore the illegal drug operation; rather, they were free to take note of and even seize anything in "plain view."

United States Kleinholz, 339 F.3d 674, 677.

The undersigned concludes that exactly the same situation exists in the case at bar. Detectives stated that because the chemicals involved in the production of methamphetamine including the chemicals that they smelled were very dangerous to humans, they were going to enter the premises to determine who was there, and to render the premises safe. As in Kleinholz, supra, this constituted exigent circumstances. Furthermore, as in Kleinholz, the officers were not required to ignore what they observed in plain view in the kitchen area where the Defendant had been seated while they were entering the house and rendering it safe. Indeed, they could make note of and even seize the property

7

as in Kleinholz, supra. Therefore, the search of the premises, and the seizure of the methamphetamine equipment is lawful. See also, United States v. Walsh, 299 F.3d 929 (8th Cir. 2002) ("the potential hazards of methamphetamine manufacture are well documented and numerous cases have upheld limited warrantless searches by police who had probable cause to believe they had uncovered ongoing methamphetamine production").

As to the vehicle outside the premises, the Defendant did not claim any connection with that vehicle or with the premises. The Defendant did not live at the premises according to his statements, and lived in Richwood, Missouri. The Defendant obviously did not come to the location driving the truck in which the anhydrous ammonia was found because the truck was inoperable and had no engine.

In United States v. Green, the Court stated that a passenger in a vehicle which was searched by the Missouri Highway Patrol had no Fourth Amendment right to challenge the search of the vehicle because that person had no reasonable expectation of privacy in the vehicle nor was one asserted by the defendant. In so holding, the Court stated as follows:

> To establish a legitimate expectation of privacy, the defendants must demonstrate: (1) a subjective expectation of privacy; and (2) this expectation is one that society is prepared to recognize as objectively reasonable, United States v. Muhammad, 58 F.3d 353, 355 (8th Cir. 1995). The ownership, possession and/or control of the area searched or item seized is relevant to the analysis. Gomez, 16 F.3d at 256. The United States Supreme Court has explicitly determined that a person has no reasonable expectation of privacy in an automobile belonging to another. Rakas, 439 U.S. at 148-149, 99 S.Ct., 421.
>
> Green can not show any possessory or privacy interest in the car. . .As a passenger, Green does not have a right to challenge the search of the car. . .

275 F.3d 694, 699.

Therefore, based on the facts presented in this case, there is nothing to indicate that the Defendant had any expectation of privacy in the search of the truck. Therefore, the evidence should not be suppressed.

## Conclusion

Therefore, the Defendant's motion should be denied.

\* \* \*

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that Defendant Turner's Motion to Suppress Evidence and Statements [Doc. #82] be **denied**.

Further, as to the motion to suppress, the parties are advised that they have until November 13, 2008 in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990)

          /s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this  3rd  day of November, 2008.